IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

FILED
IN OPEN COURT

DEC 1 5 2025

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:25-cr-99 |
| VLADYSLAV FITSAK, | |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the defendant, VLADYSLAV FITSAK (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

### Background

1.     On or about March 14, 2023, the defendant VLADYSLAV FITSAK used a fraudulent Polish passport bearing the name "James Vituschi"; DOB 6/16/1984; and Passport Identification Number: KF6076781 ("the fraudulent Polish passport") to open a business checking account ending in -5261 at JPMorgan Chase Bank in Norfolk, Virginia, in the name of TYC Motor Cargo LLC.

2.     On or about March 14, 2023, the defendant VLADYSLAV FITSAK used the fraudulent Polish passport to open a business checking account ending in -0831 at PNC Bank in Virginia Beach, Virginia, in the name of TYC Motor Cargo LLC.

3.     On or about March 16, 2023, the defendant VLADYSLAV FITSAK used the fraudulent Polish passport to open a business checking account ending in -6634 at Wells Fargo Bank in Virginia Beach, Virginia, in the name of TCR Motor Cargo LLC.

1

VF cgd

4.      On or about March 14, 2023, the defendant VLADYSLAV FITSAK used the fraudulent Polish passport to open a business checking account ending in -0787 at Truist Bank in Virginia Beach, Virginia, in the name of TYC Motor Cargo LLC.

5.      Norfolk, Virginia and Virginia Beach, Virginia are both located within the Eastern District of Virginia.

6.      There is no record of a "James Vituschi" with a DOB 6/16/1984 in the Polish citizen records, nor is there a record of Passport Identification Number: KF6076781 being issued to any such individual.

7.      TYC Motor Cargo LLC was a limited liability company registered in the Commonwealth of Virginia. It was formed on February 14, 2023, and the principal office address is listed at an apartment in Virginia, Beach, Virginia ("the Virginia Beach Residence"). The entity was listed as "inactive" as of July 1, 2023.

8.      TCR Motor Cargo LLC was a limited liability company registered in the Commonwealth of Virginia. It was formed on February 15, 2023, and the principal office address is listed at the Virginia Beach Residence. The entity was listed as "inactive" as of July 1, 2023.

9.      The defendants' co-conspirators created TYC Motor Cargo LLC and TCR Motor Cargo LLC to facilitate the fraudulent scheme described below.

<u>Scheme and Artifice to Defraud</u>

10.      M.E.H. is a contractor residing in Arkansas whose company installs underground utility pipes.

11.      In or about April 2023, M.E.H. observed an advertisement on Facebook Marketplace that contained a link to a website for a company purporting to sell construction equipment. M.E.H. also spoke with an individual who claimed to be a company representative.

2

12. M.E.H. agreed to purchase an excavator from the company and received an invoice from N.I.C. for $99,986.

13. N.I.C.'s address listed on the invoice belonged to a legitimate heavy equipment and tool rental business in Staten Island, New York. The invoice also included the name of a legitimate employee who worked for the New York business.

14. In response to the invoice, on or about April 19, 2023, M.E.H. wired $99,986 from an Arvest Bank account ending in -1852 to the JPMorgan Chase Bank business checking account ending in -5261 in the name of "TYC Motor Cargo LLC" in Virginia Beach, Virginia. M.E.H. never received the excavator.

15. Arvest Bank is located in Arkansas. To facilitate the wire transaction referenced in Paragraph 14, the data traveled interstate before reaching the JP Morgan Chase business checking account ending in -5261.

16. An "e-withdrawal" at JPMorgan Chase Bank is a withdrawal that takes place at a branch location, but instead of providing a withdrawal slip to a bank teller, a customer can use their debit card and PIN to facilitate the transaction. A bank teller ultimately physically provides the customer with the funds withdrawn. This process allows for withdrawing larger amounts of cash than would otherwise be accessible using an Automated Teller Machine (ATM).

17. On or about April 20, 2023, the defendant conducted a $33,000 e-withdrawal from a JPMorgan Chase Bank in Norfolk, Virginia. *Ending in -5261 (w) VFKST*

18. On or about April 21, 2023, the defendant conducted a $35,000 e-withdrawal from a JPMorgan Chase Bank in Norfolk, Virginia. *Ending in -6261 (w) VFKST*

VF cqd
KST

3

19. In or about April 2023, R.S. observed an advertisement for a car on Facebook Marketplace that contained a link to a dealership website. R.S. spoke with multiple individuals claiming to be associated with the dealership.

20. R.S. agreed to purchase the car and on or about April 26, 2023, wired $31,995 to the PNC Bank business checking account ending in -0831 in the name of "TYC Motor Cargo LLC." R.S. never received the car.

21. R.S. later determined that the link on the Facebook Marketplace advertisement was associated with an address that had belonged to a legitimate car dealership that had gone out of business.

22. The defendants' conspirators created the materially false and fraudulent online advertisements referenced above, and others similar, for items for sale.

23. At the defendant's conspirators' direction, the following victims, in addition to those mentioned above, wired money to the bank accounts fraudulently opened by the defendant.

a. The conspirators directed an employee of P.M., a Virginia resident, to wire a payment of $25,486 to the business checking account ending in -6634 at Wells Fargo Bank for heavy equipment that was falsely advertised online as being available and for sale.

b. The conspirators directed J.C., an Alabama resident, to wire a payment of $24,072 to the business checking account ending in -5261 at JPMorgan Chase for a vehicle that was falsely advertised online as being available and for sale.

c. The conspirators directed S.S., a Connecticut resident, to wire a payment of $30,000 to the business checking account ending in -0787 at Truist Bank

for a vehicle that was falsely advertised online as being available and for sale.

d. The conspirators directed J.S., a Tennessee resident, to wire a payment of $25,000 to the business checking account ending in -5261 at JPMorgan Chase for a vehicle that was falsely advertised online as being available and for sale.

e. The conspirators directed M.H., a West Virginia resident, to wire a payment of $24,976 to the business checking account ending in -0831 at PNC Bank for heavy equipment that was falsely advertised online as being available and for sale.

f. The conspirators directed M.D., a Louisiana resident, to wire a payment of $37,000 to the business checking account ending in -0831 at PNC Bank for a vehicle that was false advertised online as being available and for sale.

g. The conspirators directed S.L., a New Hampshire resident, to wire a payment of $10,000 to the business checking account ending in -0787 at Truist Bank for a vehicle that was falsely advertised online as being available and for sale.

24.    The defendant's primary role in the conspiracy was to fraudulently open bank accounts in the name of the false businesses described above and then to subsequently withdraw funds victims wired to the bank accounts he fraudulently opened.

25.    The defendant agrees that both he and his co-conspirators benefitted financially from the fraudulent activity described above.

5

VF  cgd

KB

26.     As a result of the conspiracy, victims wired $351,503 to bank accounts fraudulently opened by the defendant.

27.     Beginning in at least as early as March 2023 through at least in or about May 2023, in the Eastern District of Virginia and elsewhere, VLADYSLAV FITSAK, and others known and unknown, knowingly and intentionally combined, conspired, confederated and agreed to commit wire fraud.   To wit, the defendant and others known and unknown, having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of execution of such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

28.     This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States.   It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case

29.     The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

[Signatures on next page.]

6

Respectfully submitted,

Lindsey Halligan
United States Attorney and Special Attorney

Todd W. Blanche
Deputy Attorney general

Robert K. McBride
First Assistant United States Attorney

By: _____

Kristen S. Taylor
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, VLADYSLAV FITSAK, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
VLADYSLAV FITSAK

I am the defendant, VLADYSLAV FITSAK's attorney.    I have carefully reviewed the above Statement of Facts with him.    To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Chad Dorsk
Attorney for VLADYSLAV FITSAK

8